# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:25-CV-00219-KDB-DCK

| | |
|---|---|
| BENN GODENZI, <br><br> Plaintiff, <br><br> v. <br><br> CMD, LLC, <br><br> Defendant. | **MEMORANDUM AND ORDER** |

In February 2021, Plaintiff Benn Godenzi contracted with Defendant CMD, LLC, an authorized retailer of new Koenigsegg vehicles, for two "build slots" with Swedish hyper car manufacturer, Koenigsegg AB. Now before the Court is Defendant's Motion for Judgment on the Pleadings (Doc. No. 6) in this dispute over Godenzi's hyper car orders, which have not yet been fulfilled. The Court has carefully considered this motion, and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the motion.

## I.       LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *See In re Bland Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 492–93 (W.D.N.C. 2021) (quoting *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002)). A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012); *Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1 (W.D.N.C. Mar. 19, 2020).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448). The Court may also consider documents attached to a motion to dismiss when they are "integral

and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–7 (4th Cir. 2015).

Additionally, Rule 12(c) allows the Court to consider the Answer to the Complaint. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012) (quoting *Alexander v. City of Greensboro,* No. 1:09–CV–293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011)); *see also Bradley v. Ramsey,* 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (finding that as it relates to Rule 12(b)(6), the key difference under Rule 12(c) is "the [C]ourt is to consider the [A]nswer as well as the [C]omplaint"). "The factual allegations in the [A]nswer are taken as true to the extent they have not been denied or do not conflict with the [C]omplaint." *Mendenhall*, 856 F. Supp. 2d at 724 (quoting *Farmer v. Wilson Hous. Auth.,* 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)) (internal quotation marks and additional citations omitted). For the "purposes of this motion [CMD] cannot rely on allegations of fact contained only in the [A]nswer, including affirmative defenses, which contradict [the] [C]omplaint" because [Godenzi] was "not required to reply to [CMD's] [A]nswer, and all allegations in the [A]nswer are deemed denied." *Jadoff v. Gleason*, 140 F.R.D. 330, 332 (M.D.N.C. 1991); *Lefkoe v. Jos. A. Bank Clothiers,* No. WMN–06–1892, 2008 WL 7275126, at *3 (D. Md. May 13, 2008).

"In addition, judgment on the pleadings is only appropriate when, taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain and the case can be determined as a matter of law." *Mendenhall*, 856 F. Supp. 2d at 724 (first citing *Smith v. McDonald,* 562 F. Supp. 829, 842 (M.D.N.C. 1983), *aff'd*, 737 F.2d 427 (4th Cir. 1984), *aff'd*, 472 U.S. 479 (1985); and then citing *Med–Trans Corp. v. Benton,* 581 F. Supp. 2d 721, 728 (E.D.N.C.2008)).

## II.     FACTS AND PROCEDURAL HISTORY

In early 2021, Godenzi entered into an agreement with CMD to purchase two "build slots" for custom Koenigsegg luxury vehicles.[1] *See* Complaint (Doc. No. 1) at ¶ 5. To memorialize the transaction, CMD issued two invoices reflecting non-refundable deposits totaling $630,000, which Godenzi subsequently paid. Doc. Nos. 5-1; 5-2; 1 at ¶ 6. Godenzi alleges CMD "promised" the vehicles would be delivered within 18 to 24 months, a representation that "induce[d]" him to enter the agreement. Doc. Nos. 1 at ¶ 18; 14 at 2. However, CMD still has not delivered the vehicles in 2025. In addition, Godenzi asserts that CMD ceased providing updates on the status of the orders beginning in August 2022. Doc. No. 1 at ¶ 17.

Prior to the cessation of communications, Godenzi alleges that CMD's managing member informed him that the price of the vehicles had increased. *Id.* at ¶ 34. Although Godenzi does not claim he was required to pay the higher price, he contends he expressly stated he would only pay the amount originally agreed upon. *Id.* at ¶ 37. Godenzi also requested an accounting of the deposits and a refund–neither of which CMD provided. *Id.* at ¶¶ 39, 47. Godenzi now believes that, because the vehicles have not been delivered, the funds were not used to secure the promised build slots but were instead diverted for CMD's own benefit. *Id.* at ¶¶ 46–48. As a result of all these circumstances, Godenzi initiated this action in March 2025. Following the filing of its Answer, CMD moved for judgment on the pleadings in June 2025. That motion is now before the Court and ripe for review.

---

[1] Because they are highly custom built, there are very few Koenigsegg vehicles manufactured each year. A build slot gives the purchaser the right to build a Koenigsegg vehicle of the type specified in the agreement with Koenigsegg AB, the Swedish manufacturer. *See* Doc. No. 5 at ¶ 5. CMD claims that Koenigsegg AB manages its production schedule and delivery timelines in its sole discretion. *Id.* at ¶ 7.

### III.    DISCUSSION

Godenzi asserts four claims against CMD: (1) breach of contract, (2) unjust enrichment, (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and (4) conversion. CMD responds that it never promised a delivery timeframe, emphasizing that it sells build slots but does not manufacture vehicles, and that it properly used the funds to secure Godenzi's production slots–which remain pending–with Koenigsegg AB, the vehicle manufacturer. Doc. No. 7 at 8, 10.

A.    Breach of Contract

Godenzi's first claim alleges the existence of a valid contract between the parties, including an orally discussed delivery window, that CMD breached when it failed to deliver the vehicles. In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *WFG Nat'l Title Ins. Co. v. Northway Homes LLC*, No. 3:24-CV-00808-KDB-SCR, 2025 WL 2417736, at *7 (W.D.N.C. June 30, 2025) (quoting *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276 (2019)).

The parties agree that they entered into an agreement for the build slots. CMD has provided two single-page invoices that purportedly reflect the terms of the agreements. *See* Doc. Nos. 7-1; 7-2. Neither invoice includes a delivery window, and CMD denies that any such promise was made. *Id.* CMD argues that Godenzi is attempting to introduce impermissible parol evidence to alter the written terms of the agreement, and that in the absence of specified delivery terms, the Court should apply UCC gap fillers which require delivery "within a reasonable time." Doc. No. 7 at 8 (citing N.C. Gen. Stat. § 25-2-309).

CMD is correct that parol evidence cannot be used to "vary, add to, or contradict a written instrument" intended as the final integration of the parties' agreement. *Berkshire Life Ins. Co. of*

5

*Am. v. Rampersad*, 557 F. Supp. 3d 690, 698–99 (E.D.N.C. 2021) (first quoting *Van Harris Realty, Inc. v. Coffey*, 41 N.C. App. 112, 115 (1979); and then citing *Hoots v. Calaway*, 282 N.C. 477, 486 (1973)) (additional citations omitted). However, at this early stage of the litigation, CMD puts the metaphorical cart before the horse. While the final terms of the bargain may be disputed (for example, it is unclear whether the invoices were meant to be the final integration of the parties' agreement), at this early stage of the case, Godenzi need only plausibly allege the existence of a contract and that CMD breached it. He has done so. Accordingly, CMD's Motion for Judgment on the Pleadings will be denied as to this claim.

B.      Unjust Enrichment

In the alternative, Godenzi next alleges a claim for unjust enrichment, should the Court find no enforceable contract. He asserts that his "claim for unjust enrichment 'operates as an equitable remedy based upon a quasi-contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered.'" *Shriners Hosps. for Children v. Shaver*, No. 2:20-CV-10-FL, 2021 WL 641433, at *6 (E.D.N.C. Feb. 18, 2021) (quoting *Ron Medlin Const. v. Harris*, 364 N.C. 577, 580 (2010)) (internal quotations and additional citations omitted). Because this quasi-contractual claim is pled in the alternative and the breach of contract claim survives, the unjust enrichment claim may also proceed.

C.      Unfair and Deceptive Trade Practices

Godenzi's third claim alleges that CMD violated the North Carolina UDTPA by (1) "intentionally misrepresent[ing]" that it could deliver the vehicles within two years despite knowing it could not; (2) informing him in 2022–well after the invoices were issued and the deposits were paid–that the vehicles' prices had increased; and (3) using his "deposit for other

6

purposes" while failing to update him on the status of the build slots with the manufacturer or to deliver the vehicles. Doc. No. 1 at ¶¶ 30, 32, 34, 40.

The UDTPA prohibits "[u]nfair methods of competition … and unfair or deceptive acts or practices in or affecting commerce ...." N.C. Gen. Stat. § 75-1.1(a). To state a claim for unfair and deceptive trade practices under the UDTPA, a plaintiff must plausibly allege that the defendant engaged in "(1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately cause[d] actual injury to the plaintiff or to his business." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 522CV00171KDBDCK, 2023 WL 6931787, at *7 (W.D.N.C. Oct. 19, 2023) (quoting *Harty v. Underhill*, 211 N.C. App. 546, 552 (2011)). *See also Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72 (2007).

A trade practice is deemed unfair "when it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and deceptive "if it has the capacity or tendency to deceive ...." *S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (quoting *Marshall v. Miller*, 302 N.C. 539, 548 (1981)). Commerce is defined as "all business activities." N.C. Gen. Stat. § 75-1.1(b). In North Carolina, business activities are broadly defined as "the manner in which businesses conduct their regular, day-today activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32 (1999); *see also Bhatti v. Buckland*, 328 N.C. 240, 246 (1991).

Our courts have often been called upon to apply these principles to UDTPA claims arising out of contractual disputes, including Godenzi's UDTPA claim here related to CMD's alleged breaches of the parties' contracts. Indeed, a UDTPA count is included as a boilerplate claim in most commercial disputes because proof of unfair and deceptive trade practices entitles a plaintiff

7

to treble damages and the possibility of an award of attorneys' fees. *See Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993). To discourage this tendency, and to reign in the "extraordinary damages authorized by the UDTPA, North Carolina courts have repeatedly held that a 'breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA,] N.C.G.S. § 75–1.1.'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992)). Instead, a plaintiff must show "substantial aggravating circumstances attending the breach." *Id.*

Thus, the question before the Court is whether Godenzi has sufficiently pled "substantial aggravating circumstances" to continue his UDTPA claim. Godenzi argues that CMD "intentionally misrepresented" that it could deliver to him two custom hyper cars within two years, and that he relied on that promise to his detriment. To be sure, it has been four years, and he is still awaiting delivery of the vehicles. But there are no specific allegations as to how any "deception" was accomplished beyond the allegation that CMD did not accurately convey the date by which the vehicles would be delivered.[2] The Court cannot find that sufficient aggravating circumstances have been alleged based merely on the fact that Godenzi believes CMD knew at the time the agreements were made that it could not deliver the vehicles within two years. Put another way, Godenzi cannot convert his breach of contract claim into a UDTPA claim simply by making conclusory claims of intentional misrepresentation and deception. *See Lowe's Companies, Inc. v.*

---

[2] Although Godenzi also claims that CMD tried to raise the price of the vehicles after the deposits were paid, Godenzi concedes that CMD did not misrepresent the vehicle prices when it told him the prices had increased, and that in any event, he refused to pay more than the "price originally agreed" upon–effectively acknowledging that he suffered no actual injury. *See* Doc. No. 1 at ¶¶ 3–37. Further, while Godenzi alleges that his deposit was used for purposes other than securing build slots and that updates were lacking, he does not allege that he currently lacks valid build slots. As noted, he claims only that the vehicles weren't delivered when promised.

*Ferrandino & Son, Inc.*, No. 522-CV-00033KDBDCK, 2022 WL 2921137, at *3 (W.D.N.C. July 25, 2022) (explaining that alleging intentional misrepresentation, without more, is insufficient to support a UDTPA claim). Otherwise, nearly all contractual disputes would too easily be transformed into UDTPA actions, contrary to well settled North Carolina law. Accordingly, this claim will be dismissed without prejudice.

        D.      <u>Conversion</u>

Godenzi's final claim alleges that CMD "was supposed to use [the deposit funds] to go towards the purchase of two custom vehicles," but that CMD has failed to deliver any vehicles or "account for the funds," thereby committing civil conversion. Doc. No. 1 at ¶¶ 45–50. To demonstrate conversion in North Carolina, a plaintiff must prove: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; and (4) to the exclusion of the rights of the true owner." *Benchmark Elecs., Inc. v. Cree, Inc.*, No. 1:16-CV-529, 2018 WL 472819, at *13 (M.D.N.C. Jan. 18, 2018), *aff'd,* 823 F. App'x 124 (4th Cir. 2020) (quoting *B.E.E. Int'l, Ltd. v. Hawes*, 381 F. Supp. 2d 488, 493 (M.D.N.C. 2005)) (additional citation omitted). "[W]hen the defendant lawfully obtains possession or control and then exercises unauthorized dominion or control over the property, demand and refusal become necessary elements of the tort." *Id.* (quoting *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 83 (2011)) (citation modified).

When money is the subject of a conversion action it must be "capable of being identified and described." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012) (quoting *Alderman v. Inmar Enterprises, Inc.*, 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002), *aff'd*, 58 F. App'x 47 (4th Cir. 2003)). "Funds transferred electronically may be sufficiently

identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529.

Here, Godenzi alleges that in February 2021, he wired $630,000 in deposits[3] to CMD for two build slots for hyper cars that were to be delivered within two years. But despite demanding delivery or a refund, Godenzi has not, more than four years, received either. Nevertheless, CMD contends that Godenzi has valid build slots and that it neither promised a delivery window nor controls the manufacturer's build schedule. However, accepting Godenzi's facts as true for purposes of a Rule 12(c) motion, the Complaint plausibly states a claim for conversion. Accordingly, this claim may proceed.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Judgment on the Pleadings (Doc. No. 6) is **GRANTED** in part and **DENIED** in part as set forth above; and

2. This case shall **proceed towards trial on the merits of the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.
Signed: November 13, 2025

Kenneth D. Bell
United States District Judge

---

[3] In its Answer, CMD confirms that it received an incoming wire for $630,000 on February 26, 2021. Doc. No. 5 at ¶ 6.